## Court of Appeal, Parish of Orleans.

## SPARKS BROS & McGEE VS. NEW ORLEANS RAILWAY & LIGHT CO.

When the driver of the team attempted to cross the track, the car was sufficiently far to have permitted the motorman to diminish or reduce its speed so as to make it possible to stop the car had it become necessary in order to avoid the collision. Running "on the loop," full speed, with a wagon and team across the track 100 feet away and no attempt on the part of the motorman to stop his car until it was within a few feet of the crossing, is such negligence and carelessness as will render the railroad company liable for the damage resulting.

Appeal from Civil District Court, Division A.

Geo. S. Dodds, Boatner & Manion, Plaintiff and Appellee.

Dart & Kernan, Defendant and Appellant.

ESTOPINAL, J. Plaintiff sued to recover the value of a mule injured by a car owned and operated by the defendant company, avering substantially that on the 5th day of December, 1905, one of their drivers, in charge of a team of mules hitched to a wagon, behind which were being led two other mules, attempted, after first carefully looking to see whether a car was approaching, to cross the tracks of defendant company on St. Charles Avenue, near the corner of Philip Street, when said team was run into by a car and one of the mules was so badly injured that it was necessary to destroy it. Plaintiff avers the accident is attributable to utter disregard of his duty on the part of the motorman and to his negligent and reckless driving of his car. The defence is a general denial, with a special allegation that the accident was due to the fault, negligence and incompetency of plaintiff's driver. To this is couple da demand in reconvention in the sum of Fifteen ($15.00) Dollars, which damage the defendant claims to have suffered from injury to its car.

There was judgment for plaintiff for two hundred and sixty-five ($265.00) dollars, and rejecting the reconventional demand. From this judgment the defendant appeals.

There is no controversy over the value of the mule ($250), and the fees of the veterinary ($15), who was called to

attend the injured mule. Our attention is directed by the industrious and learned counsel for defendant to the fact that plaintiffs do not charge negligence because of poor or bad equipment of the car, as for instance, the condition of the brakes or the absence of sand-boxes, etc., nor that the motorman was incompetent, and that therefore no evidence was introduced on those points, and no negligence shown in that respect.

Our study of the record satisfies us that that statement is a fair one, and we agree with counsel that "the sole question presented by the pleadings is whether the motorman, with the instruments under his control, and considering the circumstances, exercised the care of a reasonable and prudent motorman."

The testimony given in this case is very conflicting. It is shown, however, that the view of the motorman, and for that matter, that of the driver of the mules as well, was unobstructed. Another established fact is, that the car left the corner of Jackson Street, where it had stopped, "on the loop," i.e., with full current turned on, and was soon speeding along at a high rate of speed, not, however, in excess of that permitted by law. The conflict of testimony is on the very material, and, indeed, the critical point in this case, to-wit: The distance at which the car was when the negro driver attempted to cross the track.

We insert in this opinion at this point a sketch of the *locus in quo*, which will make clearer the brief discussion which will be given the case.

The statement of the negro driver, "that the car was at a standstill at the corner of Jackson Street, just one block away from the point of the accident, Philip Street, when he started to cross the tracks, impressed us, when the case was argued, as being highly improbable, but a reading of the testimony and study of the sketch in connection therewith makes the driver's narrative of occurrences just preceding the collision more than probable.

It will be noticed by reference to sketch, that in turning into Philip Street crossing on St. Charles Street, a vehicle makes a long turn, describes the segment of a circle, and some time is consumed in reaching the car track. It is evident that after he turned in from St. Charles Street into the Philip Street crossing in his attempt to cross the track, he no longer worried about the car which had now left its stand and was speeding on its way uptown.

It is clear to us from our appreciation of the testimony that the motorman, if alert and watchful, could not avoid seeing the wagon and team in the act of crossing the tracks in front of him in sufficient time to reduce speed in order to more easily stop his car if necessary. The view was unobstructed, and it was certainly gross carelessness for the motorman to run his car "on the loop," when ordinary care and a proper regard for the safety of persons driving vehicles, who must cross the tracks, should have dictated to him another course.

The testimony, when sifted and analized, points to the motorman's utter indifference and carelessness. The evidence of disinterested and unimpeached witnesses is to the effect that the car was 100 feet away when their attention was called to the approaching car and the wagon and team on the tracks.

As before stated, the wagon had a long turn to make to get on the tracks, and this was notice and warning sufficient to the motorman to at least reduce the speed of his car, and thereby make it possible for him to stop. (Had the driver of the wagon driven rapidly to the corner of Philip, and suddenly wheeled and turned at right angles and run up on the track immediately in front of a fast moving car, another case would be presented, and the authorities cited by defendant and the sound and logical reasons for same would apply.)

The driver of a wagon neither commits a crime nor is

119

guilty of negligence and recklessness because he crosses the tracks in front of a moving car when at the moment he is upon such track the car is sufficiently far, and we so find from the evidence in this record, either to slack its speed or stop altogether, if necessary to avoid a collision.

Our learned and painstaking brother of the District Court has taken every means to inform himself as to the facts, even to the extent of visiting the point where the accident happened. He saw and heard the witnesses, and believed those testifying for plaintiffs. He visited the *locus in quo* after an application for a new trial was filed, and in refusing the application used this language:

"A review of the case and a visit to the *locus in quo* and a careful look at it since this motion was filed, convinces me that the defendant's motorman was in gross fault. The view is open, and he could have seen in ample time to have saved the mule if he had looked. I do not find that the plaintiff's driver was guilty of contributory negligence when he started across the tracks."

Defendant Company endeavors to show that the injury to the car vestibule was done by the ramming, as it were, of the car by the wagon pole. This theory is entirely rejected by the record, which shows that the driver attempted to ward off the impending collision by turning his mule around and away from the approaching car, and partially succeeded in doing so. The wagon pole was, therefore, pointing in the same direction in which the car was proceeding, and it was physically impossible for the car to become impaled on the pole. The wagon did not run into the car. The car ran into the wagon, and this, through the fault and negligence of the motorman. We find no reason to disturb the judgment of the Court *a qua,* and it is hereby affirmed.

March 23, 1908.

Rehearing refused May 19, 1908.